HOME STATE BANK/NATIONAL ASSOCIATION, Plaintiff-Appellee and Cross-Appellant, v. RALPH POTOKAR, Defendant (Raymond Salm, Citation Respondent-Appellant and Cross-Appellee).

Second District   No. 2—92—0949

Opinion filed August 5, 1993.

Kirk L. Miller, of Law Offices of Kirk L. Miller, of Highland Park, for appellant.

Andrew T. Freund and Valeree D. Marek, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

This appeal and cross-appeal arise from orders entered during the course of supplementary proceedings in connection with a lawsuit by plaintiff, Home State Bank/National Association (the bank), against defendant, Ralph Potokar, seeking recovery on a promissory note. Raymond Salm appeals from an order of the circuit court of McHenry County that held that an assignment by Potokar to Salm of stock in MacNair Development, Inc. (MacNair), was void and directed MacNair

and its corporate secretary to turn over amounts representing dividends on the stock to the bank. The bank cross-appeals from an order of the circuit court granting Salm's motion to strike the bank's request for a determination of attorney fees.

The relevant facts are as follows. The bank filed its complaint in this action on April 30, 1990, seeking recovery of amounts due under a promissory note executed by Potokar. The promissory note expressly provided that Potokar "agree[d] to pay reasonable attorney's fees, costs and expenses incurred by [the bank] in the collection and enforcement of this Note," and the bank requested an award of attorney fees and costs of suit in its complaint.

On January 7, 1991, on an oral motion by the bank, the trial court held Potokar to be in default due to his failure to appear at the law jury trial conference call. Two days later, however, the circuit court vacated the default judgment and entered an agreed order governing payment of the promissory note. Paragraph 1 of the agreed order set forth a schedule for payment of the promissory note and attorney fees and costs incurred in the litigation up to January 15, 1991. The agreed order further provided that judgment would not be entered against Potokar at that time, but that should Potokar breach the terms of the agreed order, amounts due thereunder would be accelerated and, on petition by the bank, judgment would enter in its favor for the amount outstanding. The agreed order also provided that the bank "shall be entitled to reasonable attorneys' fees and costs relating to the enforcement of the agreement herein" and that the circuit court would "retain jurisdiction over this matter until the sums stated in paragraph 1 above have been fully satisfied by Defendant."

On April 15, 1991, the bank moved for the entry of judgment against Potokar pursuant to the agreed order, on the basis that Potokar had failed to make certain payments required under the agreed order. In its motion the bank also requested attorney fees and costs. The trial court granted the motion on the same day and entered an order stating that judgment was entered against Potokar in the amount of $29,170.72 plus interest, costs and attorney fees. The April 15, 1991, order did not, however, specify the amount of attorney fees and costs, nor did it expressly reserve jurisdiction over the matter of fees and costs or schedule further proceedings relative to fees and costs.

Thereafter, the bank instituted supplementary proceedings, serving Potokar with a citation to discover assets on June 14, 1991, commanding his appearance for examination and prohibiting him from transferring or otherwise disposing of nonexempt property. During

examination pursuant to the citation, Potokar indicated that he was a plaintiff in a lawsuit pending in the United States District Court for the Northern District of Illinois. Accordingly, on September 3, 1991, the bank filed a motion pursuant to section 2—1402(b)(5) of the Civil Practice Law (735 ILCS 5/2—1402(b)(5) (West 1992)) seeking an order requiring Potokar to assign it the Federal court cause of action "in order to satisfy Plaintiff's Judgment." The trial court granted the motion. Its order, dated September 3, 1991, provided that Potokar was "ordered to assign any interest or right that he may have [in the Federal court cause of action] to satisfy Plaintiff's judgment awarded herein."

Additionally, on September 19, 1991, the trial court entered an order requiring Potokar to turn over the proceeds from his Federal court lawsuit. The order further provided that it constituted a lien on such proceeds to be imposed upon the attorney for the defendants in that lawsuit. An order entered on December 30, 1991, again required Potokar to assign his interest in the Federal court action to the bank. Potokar ultimately delivered a written assignment to the bank in January 1992. After the delivery of the assignment, judgment was entered in the plaintiff's favor in the Federal court action. Potokar's share of the judgment was $360,000. The record establishes that this judgment had not been collected as of June 1992.

During the supplementary proceedings, the bank learned of Potokar's interest in and involvement with MacNair. Both Potokar and Raymond Salm had been shareholders and directors of MacNair, and Potokar had been president of MacNair since its formation. In May 1991, MacNair had directed the sale of certain real property held in a land trust for a purchase price of $782,000, payable in three installments, the second of which was in the amount of $226,000 and was due on March 20, 1992. MacNair planned to distribute the second and third installments to its shareholders as a dividend on their stock. The bank also discovered that on July 6, 1991, subsequent to having been served with the citation to discover assets, Potokar had assigned his shares of stock in MacNair to Raymond Salm as security for payment of a promissory note in the amount of $95,000.

On March 6, 1992, the bank served a citation to discover assets on MacNair's corporate secretary, and on April 14, 1992, the bank filed a "Motion for Turnover of Assets," seeking an order requiring MacNair to turn over the dividends payable on the stock assigned by Potokar to Salm. The motion asserted that the transfer of the stock constituted a fraud against the bank and was therefore void. An evidentiary hearing on the turnover motion was conducted, and, on May 12, 1992,

the trial court issued a memorandum opinion finding that the assignment of Potokar's stock to Salm violated section 6(b) of the Uniform Fraudulent Transfer Act (740 ILCS 160/6(b) (West 1992)) and holding that the bank was entitled to the relief requested in the turnover motion. The trial court directed the bank's attorneys to prepare an order consistent with the memorandum opinion.

On May 26, 1992, the bank filed a petition seeking a determination of the allowable amount of interest, attorney fees and costs as awarded by the court in its order of April 15, 1991. Salm moved to strike the petition asserting, *inter alia*, that the trial court lacked jurisdiction to consider the request for attorney fees since more than 30 days had passed since the entry of judgment against Potokar on April 15, 1991. On June 25, 1992, the trial court granted Salm's motion in part, striking only the bank's request for a determination of attorney fees. On July 13, 1992, the court entered an order awarding the bank costs in the amount of $638.50, and directing MacNair to turn over the sum of $33,073.48 to the bank. The present appeal and cross-appeal followed.

Salm contends on appeal that the judgment against Potokar was satisfied by the assignment to the bank of Potokar's interest in the lawsuit then pending in Federal court in which Potokar was a plaintiff. In support of his argument, Salm points to certain language in the bank's motion seeking the assignment and language in the written assignment Potokar delivered to the bank, as well as certain conduct by the bank during the course of the supplementary proceedings.

■ Generally, the only way in which a money judgment can be satisfied is by payment in money unless the parties agree otherwise. (*Heller v. Lee* (1985), 130 Ill. App. 3d 701, 702, citing *A D A Enterprises Inc. v. Thompson* (1965), 26 Wis. 2d 269, 132 N.W.2d 244; 47 Am. Jur. 2d Judgments §985 (1969).) Whether an agreement to satisfy a judgment has been concluded is a question of fact for the trial court. (*Russell v. Klein* (1975), 33 Ill. App. 3d 1005, 1008.) Issues of fact concerning satisfaction of judgments are best left to be resolved by the trial court. (*Marks v. L.C.J. Construction Co.* (1980), 89 Ill. App. 3d 418, 422.) The trial court's judgment will not be disturbed unless against the manifest weight of the evidence. *Marks*, 89 Ill. App. 3d 418; see also *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1980), 86 Ill. App. 3d 7, 11 ("manifestly erroneous" standard is applicable in garnishment proceedings).

■ Salm contends that the bank agreed to accept the assignment of Potokar's cause of action in satisfaction of its judgment. Salm initially notes that the bank, in its motion seeking the assignment, re-

quested that the court order the assignment "in order to satisfy" the bank's judgment. We do not find any indication in this language that the bank agreed to take the assignment in full satisfaction of its judgment. The motion does not state that the assignment would be taken "in satisfaction" of the judgment. The language used simply expresses the bank's purpose in seeking the assignment. Nothing in the bank's motion in any way suggests that the bank agreed to relinquish its right to obtain full payment of the judgment.

Salm also points out that, although the trial court, in its order of September 19, 1991, created a lien on the proceeds of the Federal court lawsuit, the bank continued to demand an assignment from Potokar. Salm argues that, since the bank already had a lien as a result of the September 19, 1991, order, the bank took the assignment not merely as security for payment of the judgment, but in satisfaction of the judgment. We believe, however, that the bank was simply acting with diligence and caution in its efforts to collect the judgment. When Potokar did not deliver the assignment, as ordered by the trial court, the bank apparently was concerned about its ability to reach the proceeds of the Federal court litigation, should they actually be distributed to Potokar, and the September 19, 1991, order was an attempt to obtain control over any potential recovery in Potokar's lawsuit before Potokar did. While the order imposing a lien might arguably be viewed as serving the same function as the assignment, it was reasonable for the bank, in the exercise of due caution, to accept additionally the written assignment provided for in the trial court's earlier order. It is not necessary to conclude that the bank accepted the written assignment for a distinct purpose. We therefore reject Salm's contention that the assignment was necessarily taken in satisfaction of the judgment.

Salm also points to language in the written assignment as evidence that it was accepted in satisfaction of the judgment, and not merely as security. The assignment provides, in pertinent part:

> "The above Assignment is made by Assignor pursuant to 2—1401(b)(5) of the Code of Civil Procedure *** and for good and valuable consideration, receipt of which is hereby acknowledged.
>
> The intent of this instrument is to transfer to Assignee the above-described claims and to confer on it the right in full power in its absolute discretion to dispose of the above-described claims at any time."

Salm argues that this language suggests an "unconditional" transfer rather than a transfer for security. While the language used in the as-

signment may have some of the flavor of an absolute transfer, we do not find it to be inconsistent with a security transaction. The rights conferred on the bank by the assignment are appropriate to enable the bank to reduce the Federal cause of action to a sum of money to be applied to the judgment.

In any event, even to the extent the language may suggest an absolute transfer, this alone is dispositive of the nature of the transaction. For example, in *Heller v. Lee* (1985), 130 Ill. App. 3d 701, the defendant posted an appeal bond consisting of, *inter alia*, a deed to real property and following affirmance of the judgment against the defendant, the trial court granted the plaintiffs' motion to release the bond and the plaintiffs took title to the property instead of compelling a sheriff's sale. In a subsequent appeal, the court accepted the plaintiffs' argument that they took the property as security for eventual cash payment of the judgment rather than in satisfaction of the judgment. (130 Ill. App. 3d at 703.) The assignment in the present case is no more absolute in character than the deed to real property in *Heller*, and, therefore, the trial court did not err in viewing the assignment as securing payment of the judgment. We note that in *Heller* the court required the plaintiffs to foreclose upon the property and apply the proceeds to the judgment, since it would be inequitable to permit the plaintiffs indefinitely to have the use and enjoyment of a valuable piece of property while proceeding with collection activities against other property of the defendants. (130 Ill. App. 3d at 703.) This concern is inapplicable in the present case since, unlike a parcel of real property, the assignment of Potokar's Federal court action is of no benefit to the bank except as a source of money to be applied to the judgment against Potokar.

Salm also contends that the consideration recited in the written assignment can only refer to the bank's agreement to accept the assignment in satisfaction of the judgment. We disagree. The recital of consideration might merely have been included in the document as a matter of form as is customary in such documents in business transactions. Alternatively, the recital of consideration might simply have been intended to reflect that the assignment was given for value insofar as amounts collected pursuant to the assignment would reduce the judgment against Potokar *pro tanto*.

Finally, Salm argues that because the bank stated in its motion requesting the assignment that it sought the assignment "in order to satisfy" the judgment against Potokar, the bank is barred by the doctrine of judicial estoppel from denying that the judgment was satisfied by the assignment. Alternatively, Salm argues that the statement con-

stitutes a binding judicial admission that the judgment was satisfied. We have already rejected Salm's interpretation of this language, and we likewise reject the arguments based on the judicial estoppel and judicial admission doctrines.

The language and circumstances Salm relies upon at most support only a weak inference that the bank agreed to accept the assignment of Potokar's interest in the Federal court action in full satisfaction of the judgment against Potokar. Salm has failed, however, adequately to explain why the bank would voluntarily relinquish its right to pursue further collection efforts upon merely receiving assignment of part of a cause of action not then reduced to judgment and of uncertain ultimate value. Although a judgment was later recovered in the Federal court action, and Potokar's share was sufficient to pay the bank's judgment against him, nothing in the record suggests that the judgment in the Federal case has been collected.

Moreover, we note that pursuant to the terms of the written assignment the bank's rights with respect to the Federal court action were limited to the amount of its judgment against Potokar. In a consensual settlement with Potokar, the bank might hypothetically have accepted an assignment of Potokar's entire interest in the full amount of his recovery in the Federal court lawsuit, in which case the possibility that the Federal court action would yield a surplus above the amount of the bank's judgment against Potokar might serve as consideration supporting the bank's agreement to forego further recourse against Potokar and his property.

In this case, there was no voluntary agreement. The assignment by Potokar was given under compulsion pursuant to the statutory mechanism for collection of judgments. The bank stood to gain no more from the assignment than that to which it was entitled, but faced the risk of an adverse, inadequate or uncollectible judgment. We can see no reason why the bank would accept the assignment in lieu of all other recourse against Potokar and his property. Salm suggests in his reply brief that the bank would do so because it believed that Potokar was insolvent, and the bank "decided to take something, [the assignment,] rather than nothing." However, the bank was entitled to demand the assignment without abandoning its right to pursue further collection efforts. If the bank did relinquish such rights, as Salm claims, it acted out of charity or despair. We find this to be unlikely. Given these circumstances, we do not find the facts and inferences relied upon by Salm to be persuasive. The trial court's order requiring MacNair to turn over dividends payable on the stock assigned to Salm

is not against the manifest weight of the evidence and will be affirmed.

■■ We next consider the bank's cross-appeal from the trial court's order of June 25, 1992, striking the bank's request for a determination of attorney fees. During the proceedings below, Salm argued, as he now does on appeal, that the bank's request for a determination of attorney fees, filed more than 30 days after the entry of judgment against defendant in the underlying action, was untimely, and accordingly, the trial court lacked jurisdiction to make the requested determination. The bank argues on appeal that contrary to Salm's assertion, the request for attorney fees was not an attempt to amend or modify the judgment in the underlying action. The bank further asserts that the trial court retained jurisdiction with respect to attorney fees, noting language in the judgment order of April 15, 1991, and in the agreed order of January 9, 1991. We agree with the bank that the trial court had jurisdiction to determine the amount of attorney fees to which the bank was entitled.

Initially, we note that contract provisions for awards of attorney fees and costs are an exception to the general rule that absent a statute which provides otherwise a successful party is not entitled to recover attorney fees. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 411-12; *La Hood v. Couri* (1992), 236 Ill. App. 3d 641, 648; *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 752; *Daiwa Bank, Ltd. v. La Salle National Trust, N.A.* (1992), 229 Ill. App. 3d 366.) That the terms of the promissory note underlying this action entitle the bank to recovery of reasonable attorney fees and costs is not in dispute. The sole basis for Salm's challenge to the bank's request for fees was the timeliness of the request.

Salm contends that the bank's request to determine allowable attorney fees was an attempt to modify or amend the judgment against defendant entered on April 15, 1991. Salm argues that the trial court lost jurisdiction to modify or amend the judgment after the passage of 30 days following its entry. It is well established that, in general, a trial court loses jurisdiction to vacate or modify its judgment 30 days after entry of judgment unless a timely post-judgment motion is filed. (*Beck v. Stepp* (1991), 144 Ill. 2d 232, 238; *In re Marriage of Agustsson* (1992), 223 Ill. App. 3d 510, 515.) This principle has been applied to bar requests for attorney fees and costs made after the trial court has lost jurisdiction due to the passage of time. In *People ex rel. Madison Chemical Corp. v. Gurrie* (1964), 52 Ill. App. 2d 360, the plaintiff in a *mandamus* action claimed interest, costs and damages in its orig-

inal petition, but neither requested these items at the time judgment was entered, nor moved that the court reserve jurisdiction for that purpose. More than three months after the the entry of judgment, the plaintiff filed a motion to assess damages and costs. On appeal, the court held that "[s]ince the petition for costs and fees was not filed within thirty days of the entry of the judgment and since jurisdiction was not retained by the court, the trial court correctly held that it was without jurisdiction to modify the judgment and the petition to modify was properly dismissed." (52 Ill. App. 2d at 364.) In *Eugene Matanky & Associates, Inc. v. Onixt* (1966), 74 Ill. App. 2d 53, the court in reliance upon *Gurrie* held that a petition for attorney fees as a sanction for untrue statements in an opposing party's pleadings was untimely when filed more than 30 days after judgment was entered. (See also *Ford Hopkins Co. v. Faber* (1970), 121 Ill. App. 2d 143; *Harlem Savings Association v. Lesniak* (1970), 121 Ill. App. 2d 137, 142; accord *Touchdown Sportswear, Inc. v. Hickory Point Mall Co.* (1987), 165 Ill. App. 3d 72 (notwithstanding failure to reserve issue of attorney fees prior to closing of proofs, where fees were pleaded, petition for attorney fees filed within 30 days of judgment was timely).) We find these cases to be distinguishable. In none of these cases did the trial court's judgment rule favorably for the party seeking attorney fees on any part of the fee issue. In the present case the trial court did award attorney fees in its judgment order, but did not set forth the amount. While the order did not expressly reserve jurisdiction to determine the amount of fees, we believe the the order must be given that effect.

In those cases where fee requests have been held to be untimely, the issue of fees was not properly before the court at the time the judgment was entered. Here, in contrast, the bank requested an award of attorney fees and costs in its motion for entry of judgment. Since the trial court awarded fees in an unspecified amount, the amount of the allowance was a matter properly before the court that remained undisposed of. *Cf. Ford Hopkins Co. v. Faber* (1970), 121 Ill. App. 2d 143, 147 (although defendant moved that master tax costs, including attorney fees, where no exception was taken to failure of master's report to recommend taxation of costs, the issue was not one that "simply remained undisposed of").

Indeed we believe that because the trial court awarded attorney fees and costs in its order of April 15, 1991, but failed to specify their amount, the order did not constitute a final judgment as to all claims in the case and was thus subject to modification prior to the entry of

a final judgment. See *Catlett v. Novak* (1987), 116 Ill. 2d 63, 68; *Leopold v. Levin* (1970), 45 Ill. 2d 434, 446.

Where a judgment disposes of fewer than all claims and lacks a finding of no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), it is subject to revision before the entry of a judgment that does in fact adjudicate all claims and liabilities of the parties. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 120.) Requests for attorney fees pursuant to a contract constitute a claim within the meaning of Rule 304(a). (*Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 397, citing *Mars v. Priester* (1990), 205 Ill. App. 3d 1060.) Since the order of April 15, 1991, did not dispose of the bank's claim for attorney fees and costs, and did not contain a special finding under Rule 304(a), it was in all respects interlocutory.

The decision in *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, which, like the present case, involved a contractual fee provision, is instructive. In *Mars*, on September 6, 1989, the trial court entered an order entering judgment in the plaintiff's favor, awarding attorney fees and costs in an undetermined amount, and setting a hearing to consider a petition for fees and costs. More than 30 days after the entry of the September 6, 1989, order, but prior to the determination of the amount of fees and costs, the plaintiff moved for reconsideration of the amount of the judgment on the principal claim. On appeal, the court considered whether the motion for reconsideration was timely so as to extend the period for filing a notice of appeal until 30 days after the disposition of the motion for reconsideration. The court concluded that the request for attorney fees was a "claim" for purposes of Rule 304(a) and, therefore, because the order of September 6, 1989, left the amount of attorney fees and costs undetermined, it did not resolve all the claims in the case and was not a final judgment. Thus the motion for reconsideration was timely even though filed more than 30 days thereafter. The court observed:

> "The attorney fees claim meets all of the criteria set out in Rule 304(a). It is a matter involved in the action; it is a possible right of the plaintiff and a possible liability for defendant. [Citations.] Because the request for attorney fees and costs is a 'claim' under Rule 304(a), it is not an issue incidental to the merits of the case. Therefore, the September 6, 1989, order was not a final judgment." *Mars*, 205 Ill. App. 3d at 1064, citing *Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372.

*Hise v. Hull* (1983), 116 Ill. App. 3d 681; *cf. Servio v. Paul Roberts Auto Sales, Inc.* (1991), 211 Ill. App. 3d 751, 760, citing *Szabo v.*

*United States Marine Corp.* (7th Cir. 1987), 819 F.2d 714, 717 (under Federal practice, where the judgment sought to be appealed from includes an order to pay attorney fees, but leaves the calculation of those fees for a later date, the judgment is not final for purposes of Federal appellate jurisdiction).

The result in *Mars* governs the disposition of the present case. The bank's request for attorney fees and costs based upon the provisions of the promissory note was a claim in the case which was not fully disposed of by the order of April 15, 1991, which merely adjudged Potokar liable for attorney fees and costs but did not set the amount. While in *Mars* the trial court did set a hearing to determine fees and costs, we do not find this circumstance to be of consequence. In the present case, the trial court's order of April 15, 1991, left the bank's claim for attorney fees and costs pending. There was no final judgment adjudicating all claims and liabilities of the parties in this case until after the entry of the trial court's subsequent orders striking the bank's request for a determination of attorney fees on June 25, 1992, and calculating the amount of costs on July 13, 1992. The trial court had jurisdiction over the case at the time the bank made its request for a determination of attorney fees, and accordingly the trial court erred in striking the request.

We recognize that our determination that the order of April 15, 1991, was not a final judgment calls into question the propriety of the supplementary proceedings that led to the turnover order at issue in Salm's appeal. Since that order lacked a special finding under Rule 304(a), it was not subject to enforcement, and there is authority that under such circumstances supplementary proceedings were improper. (See *Cochran v. Howell* (1964), 46 Ill. App. 2d 304 (abstract of opinion).) However, at no point was any objection to the supplementary proceedings made on this basis, and we will not consider the possibility of error on this basis *sua sponte.*

For the foregoing reasons, the order of July 13, 1992, directing the turnover of dividends on stock assigned by Potokar to Salm is affirmed. The portion of the order of June 25, 1992, striking the bank's request to determine attorney fees is reversed, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

McLAREN and GEIGER, JJ., concur.