# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Crown Mortgage Co. v. Young, 2013 IL App (1st) 122363**

---

| | |
|---|---|
| Appellate Court Caption | CROWN MORTGAGE COMPANY, Plaintiff, v. JOSEPH YOUNG; MINNIE McCLINDEN, a/k/a MINNIE L. McLENDON; UNKNOWN OWNERS AND, NON RECORD CLAIMANTS, Defendants-Appellees. (Unclaimed Funds Unit, LLC, Petitioner-Appellant) |
| District & No. | First District, First Division <br> Docket No. 1-12-2363 |
| Filed | March 18, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Appellant's petition for the turnover of surplus foreclosure funds due defendant mortgagor was properly denied on the ground that the terms of the agreement under which defendant assigned her interest in the funds to appellant in exchange for $50 plus half of the surplus was unconscionable, since defendant could barely read, she did not understand that appellant was involved in the foreclosure business, and she could have used the trial court's help desk to obtain the money without paying any fees. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-04632; the Hon. Moshe Jacobius, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Office of Jonathan D. Peterson, of Chicago (Jonathan D. Petersen and Natasha A. Burkett, of counsel), for appellant.

James A. Brady and Miriam Hallbauer, of Chicago, for appellees.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court with opinion.
Justice Rochford concurred in the judgment and opinion.
Justice Delort specially concurred, with opinion.

**OPINION**

¶ 1    The appellant, Unclaimed Funds Unit, LLC (Unclaimed), appeals the circuit court's order denying its petition for turnover of surplus foreclosure funds owed to the defendant, Minnie McLenden. Unclaimed argues that the defendant validly assigned her interest in the surplus to it and that the court erred in finding the assignment unconscionable. For the reasons that follow, we affirm the circuit court's judgment.

¶ 2    This matter arises out of the 2004 foreclosure of the defendant's mortgage on her home, whose later judicial sale yielded a surplus of over $14,000. The defendant never claimed the funds on her own, but, in February 2012, Unclaimed filed a petition for turnover of the funds. The petition stated that the defendant had assigned her interest in the funds to Unclaimed, for "Fifty Dollars *** and for other good and valuable consideration." On April 18, 2012, Unclaimed appeared in the circuit court to prosecute its petition, and it asserted that it had promised to give the defendant $50 plus half of the surplus in exchange for her assignment of the full $14,000 to Unclaimed. After the attorney for Unclaimed acknowledged that he had not given the defendant notice of the court hearing, the circuit court informed him that it would not proceed absent such notice. The court also warned that he saw "a serious issue of conscionability" of the assignment contract. The court explained as follows:

"We have rules here in terms of how much you can charge on a mortgage foreclosure, $1,500. To charge somebody $7,000 for something that is not at all difficult or complicated because of the fact that we have a help desk here–anybody can go here. We have people, *pro se*s, and basically they pay nothing."

¶ 3    On May 1, 2012, the defendant appeared in court and testified regarding the assignment contract. The defendant recalled that she received a letter "stating that [she] had some money that [she] didn't even know about." The defendant stated that she could go about getting the money "through [Unclaimed]." She said that she contacted Unclaimed, which sent a notary to her home with papers for her signature. The defendant said that Unclaimed never told her that she could obtain the money without its help and that she agreed to split the money with Unclaimed in exchange for assistance. However, she agreed that the actual contract that she

-2-

signed stated that she would receive only $50 and unspecified other consideration, without making mention of any split of the proceeds. When asked, the defendant said that she did not know that she could have obtained all of the money by consulting with the court's help desk. She said that she agreed to the assignment because she believed that Unclaimed was working as her attorney, and because it informed her of her entitlement to the funds. On further examination, the defendant testified that she could read only "[a] little bit" and that her niece read the contract to her before she signed it.

¶ 4 After hearing the defendant's testimony, the court declared the agreement to be unconscionable, denied Unclaimed's petition, and informed the defendant that she could go to the help desk to claim the entire $14,000.

¶ 5 Unclaimed later filed a timely motion to reconsider, to which it attached a copy of the initial letter it had sent to the defendant, as well as a copy of a contract between it and the defendant. The contract stated that Unclaimed would give the defendant half of the surplus funds, plus $50. The initial solicitation letter stated that Unclaimed had "located monies that we believe belongs [*sic*] to you" and that, with her approval, it would "do further research and then determine the best method for retrieving the monies." The letter invited the defendant to call Unclaimed for further information. The circuit court denied the motion to reconsider, and Unclaimed filed this timely appeal.

¶ 6 Unclaimed's principal argument on appeal is that the circuit court erred in declaring its contract with the defendant to be unconscionable. The parties do not dispute the facts underlying the circuit court's determination of unconscionability; they present us with only the question as to whether the court correctly found unconscionability based on those facts. "The determination of whether a contract or a portion of a contract is unconscionable is a question of law, which we review *de novo*." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 22 (2006).

¶ 7 "Unconscionability can be either 'procedural' or 'substantive' or a combination of both." *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 99 (2006). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the [party] cannot fairly be said to have been aware [she] was agreeing to it, and also takes into account a lack of bargaining power." *Razor*, 222 Ill. 2d at 100. "Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Razor*, 222 Ill. 2d at 100. We agree with the circuit court's determination that both facets of unconscionability are present here.

¶ 8 Several aspects of this contract's formation indicate its procedural unconscionability. First, there was an obvious inequality in the parties' abilities to understand the transaction at hand. Unclaimed, a company that deals in this type of transaction, presented its contract to a defendant who did not fully understand Unclaimed's relationship to her and, had very limited reading skills, and had no knowledge of the simple procedures required to obtain the surplus money at issue. Unclaimed preyed on this disparity by claiming in its solicitation letter that it needed to conduct research to determine how to obtain the money, when, as the circuit court noted, the matter required no research at all. Second, and relatedly, there existed a vast discrepancy in bargaining power between the defendant, a widowed woman with

limited education and apparently limited means, and Unclaimed, a company with sufficient resources to send a notary to the plaintiff's residence to obtain her signature on a contract it devised. Third, the defendant's testimony regarding how the contract was presented to her demonstrates that she was offered no opportunity to change the contract that Unclaimed proposed or to meaningfully negotiate its terms.

¶ 9 Standing alone, this procedural unconscionability might be insufficient to invalidate Unclaimed's contract. However, it more than suffices once combined with an even stronger showing of substantive unconscionability. As the circuit court noted, this agreement would have the defendant pay approximately $7,000 to Unclaimed for a service she could have obtained for free. These terms epitomize the " 'overall imbalance in the obligations and rights imposed by [a] bargain, and significant cost-price disparity' " (*Kinkel*, 223 Ill. 2d at 28 (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 907 P.2d 51, 58 (Ariz. 1995) (*en banc*))) that defines substantive unconscionability. Indeed, although Unclaimed's appellate brief contains a section purporting to challenge the circuit court's substantive unconscionability finding, that section offers nothing to address the gaping cost-price disparity in this agreement; it instead diverts attention back to the procedural aspects of the contract. Accordingly, we see no reason to dispute the circuit court's conclusion that Unclaimed's contract with the defendant was substantively unconscionable. Based on this strong substantive unconscionability, paired with some level of procedural unconscionability, we share the circuit court's view that Unclaimed's contract was unconscionable and should not be enforced.

¶ 10 Unclaimed raises two additional arguments on appeal, but we may dispose of both in short order. First, Unclaimed argues that the court erred in declining to consider it a successor in interest or a substitute party, so that it could petition for the unclaimed foreclosure surplus. This argument is based on the premise that Unclaimed's contract with the defendant was valid. Because we conclude that the contract is not valid, we agree with the circuit court's refusal to consider Unclaimed a successor in interest or substitute party in this action.

¶ 11 Second, Unclaimed asserts that, by raising the issue of unconscionability *sua sponte*, and by indicating before a final ruling that he was inclined to find unconscionability, the circuit court betrayed a lack of impartiality. This argument is not well-taken. As the defendant observes in her brief, " 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge,' " unless " 'they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The circuit court's statements and actions here did nothing to reveal anything resembling such a high degree of antagonism, and we reject Unclaimed's argument to the contrary.

¶ 12 For the foregoing reasons, we conclude that the circuit court did not err in denying Unclaimed's petition for turnover of surplus foreclosure funds.

¶ 13 Affirmed.

¶ 14     JUSTICE DELORT, specially concurring.

¶ 15     I concur completely with Justice Hoffman's opinion. As a judge who heard tens of thousands of foreclosure cases at the trial court level over the course of five years, I write separately to provide some additional background about the issues presented. Because of the depressed real estate market, the number of current foreclosure cases resulting in a surplus is infinitesimal. Therefore, cases regarding distribution of surplus funds arise quite infrequently. Nonetheless, the issues presented herein are quite important, and they may gain greater relevance once the real estate market improves.

¶ 16     The chancery division of the circuit court of Cook County, in which this case was originally heard, is one of the busiest mortgage foreclosure courts in the nation. To ensure that the large number of these sensitive cases is heard efficiently and adjudicated correctly, the court established a dedicated foreclosure section staffed by judges knowledgeable in foreclosure law. Cook Co. Cir. Ct. G.O. 1.2, § 2.1(b)(2) (Mar. 1, 2005). The presentation of foreclosure cases in Cook County is governed by a detailed set of rules and standing orders. See, *e.g.*, Cook Co. Cir. Ct. Mortgage Foreclosure Courtroom Procedures (rev. July 31, 2012), http://www.cookcountycourt.org/Portals/0/Chancery Division/Forms/Courtroom Procedures 7-31-2012.1pdf (last visited Mar. 6, 2013). These rules ensure that judges have sufficient information before them when entering foreclosure judgments, and help protect the interests of disadvantaged homeowners, who usually represent themselves. In particular, some of the rules address scams perpetrated by individuals seeking to take advantage of unwitting mortgagors.

¶ 17     On July 21, 2003, the presiding judge of the chancery division adopted General Administrative Order 2003-03 (hereinafter Order 2003-03) to address problems stemming from judicial sales of foreclosed property which generated surplus funds unclaimed by the mortgagors. Cook Co. Cir. Ct. G.A.O. 2003-03, http://www.cookcountycourt.org/Portals/0/ Chancery Division/ General Administrative Orders/ GO 03-03.pdf (last visited Mar. 6, 2013). One concern was that persons were combing court files to find surplus cases, impersonating mortgagors, and then trying to claim the surplus. Order 2003-03 requires that mortgagors, with a few exceptions not relevant here, present their surplus motion before the presiding judge with photographic identification in hand. Another motivation for Order 2003-03 was the practice of certain companies which would also identify surplus cases, track down the mortgagor, and then enter into a contingency fee contract to return the mortgagor's own money to him or her. If someone else claims the mortgagor's surplus under an "assignment" (the original order sets off the word in quotation marks), the mortgagor still must appear so that the judge can question her about "the circumstances leading to the 'assignment.' " That is exactly what Presiding Judge Jacobius did here.

¶ 18     The foreclosure courtroom procedures also require orders confirming surplus sales to specifically command the lender's attorney to send a simple notice to the mortgagors, advising them of their right to claim the surplus and enclosing a fill-in-the-blank motion for them to claim their money. Cook Co. Cir. Ct. Mortgage Foreclosure Courtroom Procedures (rev. July 31, 2012), http://www.cookcountycourt.org/Portals/0/Chancery/Division/Forms/

Courtroom Procedures 7-31-2012.1pdf (last visited Mar. 6, 2013). Our supreme court on February 22, 2013, adopted very similar rules, applicable statewide, facilitating the ability of mortgagors to claim surplus funds. Ill. S. Ct. R. 113(f)-(h) (eff. May 1, 2013).

¶ 19 Order 2003-03 prohibits rank-and-file foreclosure judges from hearing surplus distribution motions. They are instead reserved to be heard only before the presiding judge himself. Because the presiding judge's docket is much less crowded than that of the foreclosure judges, and his courtroom is staffed with a court reporter, he can devote the necessary time to carefully review surplus motions and ensure the general integrity of the process. Additionally, there is a "help desk" at the courthouse staffed by attorneys who prepare surplus claim motions for mortgagors free of charge.

¶ 20 The herculean efforts of the judges, court staff, and county agencies to inform mortgagors of their ability to claim surplus funds somehow evaded defendant McLenden. She did, however, respond to a letter from Radosvet Krastev of Unclaimed Funds Unit LLC, stating that the company would "do further research and then determine the best method for retrieving the monies." The company's letter specifically states "we do not charge a fee." An unsophisticated reader might be lured into signing up in the hope of receiving "free" money, not noticing that the letter is unprofessionally prepared and contains numerous typographical and capitalization errors. McLenden responded, and within a few days, the company sent its "mobile notary" out to ensure that she signed on the proverbial dotted line and gave up half of her own money for a service she could have received for free.

¶ 21 Unclaimed Funds argues strenuously for the enforcement of its written contract with McLenden and complains about the presiding judge's administration of a salutary process established for almost a decade. While contract law is structured to ensure that parties receive the benefit of their bargain, our opinion finds that the law can only stretch so far. McLenden's contract falls within the narrow exception under which an otherwise valid contract is void because of unconscionability. The circuit court's ruling to invalidate McLenden's contract is well-supported by the testimonial and documentary evidence in the record, and the result below is exactly what the foreclosure section's rules were adopted to achieve.