# Illinois Official Reports

## Appellate Court

---

### *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*,
### 2015 IL App (1st) 140428

---

| | |
|---|---|
| Appellate Court Caption | JP MORGAN CHASE BANK, N.A., Successor by Merger to Chase Home Finance LLC, Successor by Merger to Chase Manhattan Mortgage Corporation, Plaintiff-Appellee, v. BANK OF AMERICA, N.A., Successor by Merger to LaSalle Bank National Association, *et al.*, Defendant-Appellant (BCL Home Rehab, LLC, Intervenor-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-14-0428 |
| Filed | December 16, 2014 |
| Rehearing granted | January 6, 2015 |
| Filed | December 14, 2015 |
| Rehearing denied | December 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-545; the Hon. Michael Otto and the Hon. Moshe Jacobius, Judges, presiding. |
| Judgment | Affirmed in part and dismissed in part. |
| Counsel on Appeal | Quarles & Brady, LLP, of Chicago (E. King Poor, Melissa E. Manning, Daniel B. Lewin, Vincent R. Angermeier, and Leonard S. Shifflet, of counsel), for appellant.<br><br>Burke, Warren, MacKay & Serritella, P.C., of Chicago (Edward J. Lesniak and Susan M. Horner, of counsel), for appellee JP Morgan Chase Bank, N.A.<br>Kusper Law Group, Ltd., of Chicago (Stewart T. Kusper and Paul C. Mallon, Jr., of counsel), for appellee BCL Home Rehab, LLC. |

| Panel | PRESIDING JUSTICE LIU delivered the judgment of the court, with opinion.<br>Justices Neville and Simon concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1    This is an appeal from a foreclosure suit brought by plaintiff, JP Morgan Chase Bank, N.A. (Chase), against several defendants, including Bank of America, N.A. (BANA), a junior mortgagee. BANA, along with the other defendants, was defaulted in the underlying action. After the foreclosure sale was conducted, BANA unsuccessfully sought to vacate the order of default and the judgment of foreclosure and sale. Subsequently, BANA filed a petition for turnover of the surplus proceeds from the sale. The circuit court denied BANA's petition and, instead, awarded the entire surplus to the intervenor, BCL Home Rehab, LLC (BCL). BANA contends that the circuit court abused its discretion in denying its petition for surplus and its motion to vacate the default judgment. For the following reasons, we affirm in part and dismiss in part.

¶ 2                            BACKGROUND
¶ 3                         A. The Mortgages
¶ 4    Jacek and Komila Wojtkowski (collectively, the Wojtkowskis) were borrowers involved in several loan transactions secured by mortgages on their residential property at 1807 Summerton Place, in Northbrook, Illinois. On September 22, 2001, the Wojtkowskis granted a mortgage to LaSalle Bank, N.A. (LaSalle Bank), as security for a loan in the amount of $400,000. On September 16, 2003, they granted a mortgage to Chase Manhattan Mortgage Corporation (Chase) as security for a loan in the amount of $156,000. Chase's 2003 mortgage, though filed later, took priority over LaSalle Bank's mortgage due to a subordination agreement executed by the banks. On September 20, 2006, a mortgage was granted in favor of Ravenswood Bank as security for a loan made to Ballard Pointe, LLC, in the amount of $6,535,000. On October 7, 2008, a mortgage was granted to Ravenswood Bank to secure a loan of $1,335,000.

¶ 5                      B. 2010 Foreclosure Lawsuit
¶ 6    In November 2010, Northbrook Bank, successor in interest to Ravenswood Bank, filed a foreclosure complaint against the Wojtkowskis and Ballard Pointe. A judgment of foreclosure and sale was entered in favor of Northbrook Bank. During the judicial sale on October 23, 2012, BCL, a third-party purchaser, bid successfully on the property for $400,000. The circuit court confirmed the sale to BCL on February 14, 2013, and entered an *in rem* deficiency judgment against the property in the amount of $800,388.50. BCL ultimately took title to the property on March 13, 2013.

¶ 7                                C. 2012 Foreclosure Lawsuit

¶ 8        On January 6, 2012, prior to the judicial sale in the 2010 lawsuit, Chase initiated the instant foreclosure suit, naming as defendants the Wojtkowskis, Northbrook Bank, and BANA, as successor by merger to LaSalle Bank. Both BANA and Northbrook Bank failed to file their appearances or answers to the complaint. The Wojtkowskis filed an appearance and a motion to dismiss pursuant to sections 2-606 and 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-606, 2-615 (West 2012)) but later withdrew their motion and failed to answer the complaint.

¶ 9        On March 19, 2013, the circuit court granted Chase's motion for a default against all of the defendants and entered a judgment of foreclosure and sale in favor of Chase for the amount of $146,117.20. Because of the default entered against BANA, BANA's junior mortgage interest was not recognized and, thus, no subordinate lien was included in the judgment. The March 19 judgment order gave the mortgagors and "property owners" until June 20, 2013, to exercise their right to redeem.

¶ 10       In May 2013, BANA retained counsel to represent it in the instant proceedings. At some point, BANA's counsel filed a motion seeking an order to vacate the default, leave to file an appearance and answer, and leave to submit a prove-up and amend the judgment of foreclosure and sale. The exact date that this motion was filed cannot be ascertained because the file stamp on the motion is illegible. BANA's counsel averred in an affidavit that the motion was filed on June 12, 2013; however, there is no evidence in the record of a file-stamped copy of the motion reflecting a purported filing on June 12, 2013 or evidence that the motion was ever docketed.

¶ 11       At the judicial sale on July 1, 2013, AD Realty, LLC (AD Realty), a purported affiliate of BCL,[1] purchased the property for $627,057. The sale resulted in a surplus of $459,857.53. On July 18, 2013, Chase moved for an order to confirm the sale. The next day, apparently for the first time, BANA filed a notice of its motion to vacate the default and obtained a hearing date of August 22, 2013.

¶ 12       On August 1, 2013, BCL filed an emergency petition for leave to intervene pursuant to section 15-1501(e)(3) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1501(e)(3) (West 2012)). BCL asserted that it had been the owner of the property prior to and at the time of the July 1, 2013 judicial sale. BCL sought to intervene in the postsale supplementary proceeding "solely to make a claim for the surplus proceeds from the judicial sale." On August 2, 2013, the court granted BCL leave to intervene and also entered an order approving the report of sale and distribution.

¶ 13       On August 9, 2013, BANA and Northbrook Bank each filed petitions for turnover of the surplus funds from the July 1 sale. BANA claimed that it had an existing lien on the property and attached an affidavit of prove-up showing an outstanding debt of $308,114.65. Northbrook Bank, meanwhile, claimed that it was a judgment creditor from the 2010 foreclosure case and asserted its *in rem* deficiency judgment of $800,388.50.

_____

[1]We take judicial notice of the fact that both "BCL-Home Rehab LLC" and AD Realty share the same street address and suite as their principal offices, according to the Illinois Secretary of State's website. Moreover, the relationship between BCL and AD Realty was acknowledged by the parties and circuit court during the hearing on the petitions for turnover of surplus proceeds.

¶ 14    On October 29, 2013, the court heard argument on BANA's motion to vacate the default and denied the motion. The court found that relief under section 2-1301 of the Code (735 ILCS 5/2-1301 (West 2012)) ceased to be available after the motion to confirm the sale had been filed. The court, nevertheless, indicated that its denial "appear[ed]" to be "without prejudice" since BANA could still file a petition for turnover of surplus proceeds.

¶ 15    On November 12, 2013, BCL filed its own petition for turnover of surplus funds. Thereafter, on December 16, 2013, the court heard argument on the competing petitions of BANA, Northbrook Bank, and BCL and indicated that it would be ruling in favor of BCL. The court found that BANA knowingly sat on its hands in this case and had no claim for the surplus proceeds as a result of its default. The court found the instant case distinguishable from *Kankakee Federal Savings & Loan Ass'n v. Mueller*, 134 Ill. App. 3d 943 (1985), which BANA cited in support of its argument. The case was continued to January 7, 2014, for entry of the court's formal ruling. On January 7, 2014, the court granted BANA leave to file its appearance *nunc pro tunc* October 29, 2013 and continued the case for BANA to file an appeal bond in the amount of $377,440.45.

¶ 16    On January 15, 2014, the court entered an order disbursing the entire surplus of $459,857.53 to BCL.[2] That day, the court also entered an order indicating that Northbrook Bank's petition for turnover of surplus proceeds had been withdrawn with prejudice.[3]

¶ 17    On February 4, 2014, BANA filed two motions: (1) a motion to reconsider the denial of the motion to vacate the default and the petition for turnover of surplus proceeds and (2) a motion to vacate the default judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2012)) and section 15-1508 of the Foreclosure Law (735 ILCS 5/15-1508 (West 2012)). The next day, BANA filed a notice of appeal from the orders of October 29, 2013; December 16, 2013; January 7, 2014; and January 15, 2014.

¶ 18    On May 20, 2014, the circuit court entered an order striking BANA's motion to reconsider as well as its section 2-1401 petition. On June 16, 2014, the court entered another order denying BANA's motion to reconsider with respect to the orders of December 16, 2013; January 7, 2014; January 15, 2014; and February 5, 2014.

¶ 19                                    ANALYSIS
¶ 20                                 A. Jurisdiction
¶ 21    BCL initially contends that this court lacks jurisdiction to review any of the orders listed in BANA's notice of appeal. In its brief, BCL directs us to the arguments raised in its motion to dismiss the appeal for lack of jurisdiction and for sanctions, filed in this court on October 14, 2014, so as to "avoid repetition." After reviewing that motion, we find that the only argument raised by BCL is that this court lacks jurisdiction to consider the dismissal of BANA's section 2-1401 petition, an order that was not even listed in the notice of appeal. It is therefore unclear whether BCL believes that we lack jurisdiction to review all of the orders listed in the notice of appeal or just the section 2-1401 petition that was not listed in the

---

[2]The court's order provided that disbursement would be stayed for 21 days to allow BANA to post an appeal bond. BANA timely posted an appeal bond on February 5, 2014.

[3]Northbrook Bank's petition was withdrawn pursuant to a stipulation it had entered into with BCL and the Wojtkowskis.

notice of appeal. For the sake of coherence and completeness, we will address our jurisdiction over each of the orders identified in the notice of appeal as well as the court's order dismissing the section 2-1401 petition given our independent obligation to do so. *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 693 (2004).

¶ 22 "The timely filing of a notice of appeal is the only jurisdictional step for initiating appellate review." *People v. Patrick*, 2011 IL 111666, ¶ 20. In the absence of a properly filed notice of appeal, a reviewing court lacks jurisdiction and must dismiss the appeal. *Id.*

¶ 23 "The purpose of a notice of appeal is to notify the prevailing party that the other party seeks review of the circuit court's judgment." *Id.* ¶ 21. Thus, the notice confers jurisdiction on the reviewing court to consider only the judgments or pertinent parts specified therein. *Id.*

¶ 24 While the notice must be specific as to the judgments being submitted for review, we note, however, that "[t]he notice of appeal should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal." (Internal quotation marks omitted.) *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). A failure to strictly comply with the form of notice will not be deemed fatal where the deficiency is of form, rather than of substance, and there is no prejudice to the appellee. *Id.*

¶ 25                                1. BANA's Motion to Vacate the Default

¶ 26 BANA attempts to appeal from the circuit court's order of October 29, 2013, denying its motion to vacate the default. As discussed below, we find that we lack jurisdiction to review this order and, consequently, must dismiss that part of BANA's appeal.

¶ 27 Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008) provides that a "notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." A notice of appeal filed more than 30 days after a final, appealable order, or order disposing of a posttrial motion, does not invoke this court's jurisdiction to consider the appeal. *Lowenthal v. McDonald*, 367 Ill. App. 3d 919, 925 (2006).

¶ 28 Here, the circuit court entered a final, appealable order in the mortgage foreclosure action on August 2, 2013, when it entered an order confirming the judicial sale. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. The court then denied BANA's postjudgment motion to vacate the default on October 29, 2013, leaving BANA 30 days to file a notice of appeal. BANA ultimately did not file its notice of appeal from the mortgage foreclosure case until February 5, 2014. By that time, its appeal from the foreclosure action was clearly untimely. We therefore conclude that we lack jurisdiction to review the denial of BANA's motion to vacate and dismiss that part of its appeal. *Lowenthal*, 367 Ill. App. 3d at 925.

¶ 29                                2. BANA's Petition for Surplus Proceeds

¶ 30 BANA next attempts to appeal from the circuit court's orders of December 16, 2013; January 7, 2014; and January 15, 2014, all of which arose from the surplus distribution

proceedings. As discussed below, we find that BANA timely appealed from these orders. We therefore find that we have jurisdiction over this portion of BANA's appeal.

¶ 31    The record shows that the supplementary proceedings held on the parties' petitions for turnover of the surplus proceeds culminated in a final order on January 15, 2014, wherein the court disbursed the surplus proceeds to BCL. BANA timely filed a motion to reconsider on February 4, 2014. It then filed its notice of appeal from the January 15 order on February 5, 2014.

¶ 32    Illinois Supreme Court Rule 303(a)(2) provides that "[w]hen a timely postjudgment motion has been filed by any party ***, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion *** becomes effective when the order disposing of said motion *** is entered." Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008). While the record is not entirely clear as to the exact date when BANA's postjudgment motion was finally ruled upon, we can say with certainty that the court struck or denied BANA's motion to reconsider either on May 20, 2014, or on June 16, 2014. BANA's notice of appeal therefore became effective on June 16, 2014, at the latest (Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008)), and conferred jurisdiction on this court at that time.

¶ 33    Our jurisdiction over the court's final order of January 15, 2014, also extends to the orders entered on December 16, 2013, and January 7, 2014, which led up to that final order. "An appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment." *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009) (citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979)). "Consequently, a court of review has jurisdiction to review an interlocutory order that constitutes a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken." *Id.*

¶ 34                              3. BANA's Section 2-1401 Petition

¶ 35    BANA, in its brief, additionally seeks review of the court's order of May 20, 2014, striking its section 2-1401 petition. As BCL points out, however, BANA never filed a notice of appeal from that order.

¶ 36    It is well settled that the filing of a section 2-1401 petition marks the beginning of a new proceeding rather than a continuation of the old one. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002). "Thus, a circuit court's ruling on such a petition is deemed a final order and provision has been made for immediate review of these orders in Supreme Court Rule 304(b)(3), which states that appeal may be taken from 'a judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure.' " *Id.* (quoting Ill. S. Ct. R. 304(b)(3) (eff. Feb. 1, 1994)). Because BANA never filed a notice of appeal from the court's order striking its section 2-1401 petition, we lack jurisdiction to review the order and must dismiss this portion of BANA's appeal. See *id.*

## B. The Surplus Proceeds

Having clarified our jurisdiction, we now turn to the sole issue in this appeal: whether BCL was properly awarded the surplus proceeds from the judicial sale following a default judgment against BANA that effectively terminated BANA's mortgage interest.

BANA argues that the circuit court erred in denying it a "fair distribution" of the surplus proceeds. Essentially, BANA claims that the order of default entered against it admitted the allegations of the complaint, which include the allegation that BANA had a valid junior mortgage on the property as security for a note in the amount of $400,000. BANA maintains that it should have been allowed to prove up the debt owed under this note and obtain a distribution of the surplus in order of the original lien priority.

BCL responds that the court did not abuse its discretion in awarding it the surplus proceeds where BANA failed to act diligently to protect its mortgage interest and, as a result, lost its right to recover under section 15-1512 of the Foreclosure Law. BCL maintains that, as the owner of the equity of redemption, it was properly awarded the surplus proceeds under the circumstances.

Section 15-1512 of the Foreclosure Law sets forth the priority in which proceeds of a judicial sale are to be distributed. It provides:

> "The proceeds resulting from a sale of real estate under this Article shall be applied in the following order:
>
>> (a) the reasonable expenses of sale;
>>
>> (b) the reasonable expenses of securing possession before sale, holding, maintaining, and preparing the real estate for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, receiver's and management fees, and, to the extent provided for in the mortgage or other recorded agreement and not prohibited by law, reasonable attorneys' fees, payments made pursuant to Section 15-1505 and other legal expenses incurred by the mortgagee;
>>
>> (c) if the sale was pursuant to judicial foreclosure, satisfaction of claims in the order of priority adjudicated in the judgment of foreclosure or order confirming the sale; and
>>
>> (d) remittance of any surplus to be held by the person appointed by the court to conduct the sale until further order of the court. If there is a surplus, such person conducting the sale shall send written notice to all parties to the proceeding advising them of the amount of the surplus, and that the surplus shall be held until a party obtains a court order for its distribution or until, in the absence of an order, the surplus is forfeited to the State." 735 ILCS 5/15-1512 (West 2012).

"[The] trial court's order of distribution of the surplus from a judicial foreclosure sale will not be disturbed on appeal absent a showing of an abuse of discretion." *Members Equity Credit Union v. Duefel*, 295 Ill. App. 3d 336, 337 (1998). An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the court's view. *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 26.

¶ 43    The record shows that BCL was awarded the surplus proceeds because (1) it was the owner of the subject property and (2) BANA failed to protect its lien, resulting in a default judgment against it. As discussed below, BCL appears to have benefitted greatly from some legal gymnastics surrounding the sale and the bid by its purported affiliate, AD Realty. In short, by not redeeming on the property after judgment was entered in this case and by intervening after the sale had resulted in a surplus and the termination of all other mortgagees' lien interests, BCL managed to successfully avoid the legal impact of an $800,388.50 *in rem* deficiency judgment on its property (resulting from Northbrook Bank's 2010 foreclosure case), in addition to the $308,114.65 junior lien interest of BANA. We nonetheless find that the circuit court did not abuse its discretion in awarding BCL the surplus proceeds under the circumstances.

¶ 44    The undisputed facts in this case show that Chase filed the instant foreclosure suit on January 6, 2012, and gave proper notice to both BANA and BCL. The record shows that BANA was served with the complaint and summons on January 10, 2012. As for BCL, Chase recorded a *lis pendens* on January 12, 2012,[4] which gave BCL constructive notice of the proceedings when it purchased the property less than a year later on October 23, 2012. *Bank of New York v. Langman*, 2013 IL App (2d) 120609, ¶ 28.

¶ 45    BANA, undeniably, failed to exercise proper diligence in protecting its mortgage lien. It did not appear or otherwise answer the foreclosure complaint for over a year and was thus defaulted on March 19, 2013. BANA waited until May 2013, before it retained counsel to represent it in these proceedings. Counsel then allegedly filed a motion to vacate the default on June 12, 2013; however, the motion was never docketed and there is no clear indication in the record as to when it was actually filed due to an illegible file stamp. The record contains only one notice of the motion, and it was filed on July 19, 2013, the day after Chase moved for an order approving the report of sale and distribution. Notably, at the time the notice was filed, a motion to vacate pursuant to section 2-1301(e) was untimely as a matter of law. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27. Under the circumstances, BANA can hardly be heard to complain that it was treated unfairly in this case. The termination of BANA's mortgage lien resulted from its default in the case and its own failure to act with any sense of urgency.

¶ 46    On the other hand, we also find that BCL was guilty of a lack of diligence. BCL was the owner of the subject property and had constructive knowledge of the pending foreclosure proceedings. Yet it failed to intervene upon taking title to the property, failed to exercise its equitable right of redemption within the appointed time, had its affiliate bid on the property at the judicial sale instead, and *only then* sought to intervene, on the day before the sale was confirmed.

¶ 47    While we cannot be certain of BCL's motivations in proceeding as it did, we find the timing of its intervention in this case to be awfully fortuitous. We note that had BCL intervened prior to the sale and exercised its equitable right of redemption, it could have

---

[4]We take judicial notice of this as it is a public record available on the Cook County recorder of deeds website. *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724 (1995) (noting that "[j]udicial notice is proper where the document in question is part of the public record and where such notice will aid in the efficient disposition of a case").

satisfied the foreclosure judgment and kept the subject property. It would not have obtained a sale, however, which is necessary to bar subsequent claims of parties to the foreclosure. See 735 ILCS 5/15-1509(c) (West 2012). Ultimately, by not intervening in a timely manner to protect its interest in the property until after the sale was confirmed, despite having constructive notice of the pending foreclosure proceeding, and having its affiliate purchase the subject property at the sale, BCL effectively took the property free and clear of any liens and then also claimed the surplus proceeds for itself. That being said, the record contains no evidence of any misconduct or fraud in the judicial sale. Though the circumstances of the successful bid by BCL's affiliate, AD Realty, in an amount four times the judgment, are highly irregular for a typical foreclosure sale, there is no allegation or finding that the sale was unconscionable, fraudulent or that justice was otherwise not done. See 735 ILCS 5/15-1508(b) (West 2012).

¶ 48        Ultimately, it is not for us to reweigh the equities in this case. The circuit court concluded that BANA was not entitled to an award of the surplus proceeds because it had no valid lien as a result of its default. It concluded that BCL, the owner of the equity of redemption, should instead receive any leftover surplus proceeds. The court's conclusion was certainly not arbitrary, fanciful, or unreasonable, and we cannot say that no reasonable person would have taken the court's view in awarding the surplus. We therefore find that the circuit court did not abuse its discretion in awarding the surplus proceeds to BCL.

¶ 49        We have considered *Kankakee Federal Savings & Loan Ass'n v. Mueller*, cited by BANA, and find it distinguishable from the case at bar. In *Kankakee Federal*, the circuit court awarded the surplus proceeds from a judicial sale to a junior mortgage holder, who defaulted and bought the property at the judicial sale. *Kankakee Federal*, 134 Ill. App. 3d at 944. On appeal, this court affirmed the circuit court's award, noting, *inter alia*, that the mortgagors had filed an answer admitting the junior mortgage holder's lien. *Id.* at 946. Importantly, we noted that our decision was "applicable specifically to the factual situation in [that] case." *Id.*

¶ 50        Here, unlike *Kankakee Federal*, both the mortgagors and BANA were found in default, meaning that there was no responsive pleading filed admitting the validity of BANA's lien. Under the circumstances, we decline to extend the holding of *Kankakee Federal* to the different facts of this case, especially where we must defer to the circuit court's judgment. We also decline to consider the nonprecedential circuit court and out-of-state decisions that have been cited by BANA.

¶ 51        Our ruling should not be read as condoning acts of legal legerdemain in foreclosure proceedings. We also stress the importance of litigating a foreclosure suit in a timely fashion. The sudden urgency asserted by all the petitioners in the instant surplus proceeding, after a complete lack of diligence or participation in the underlying foreclosure case, leaves much to be desired. Fortunately, the circuit court displayed great acumen in recognizing the various issues involved and made a well-reasoned decision in awarding the surplus proceeds.

¶ 52        For the reasons stated, we dismiss BANA's appeal of the circuit court's orders denying its motion to vacate default and striking its section 2-1401 petition. The order of the circuit court of Cook County awarding BCL the surplus proceeds from the foreclosure sale is affirmed.

¶ 53        Affirmed in part and dismissed in part.