2021 IL App (2d) 190163-U
No. 2-19-0163
Order filed August 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| HONG ZHANG, | ) | of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 07-D-1808 |
| | ) | |
| YINGJUN TANG, | ) | Honorable |
| | ) | Timothy J. McJoynt, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed petitioner's section 2-1401 petition because she failed to allege facts to support her argument that she exercised due diligence or had a meritorious claim or defense in the original proceeding.

¶ 2    Petitioner, Hong Zhang (Holly), appeals from the order of the circuit court of Du Page County dismissing with prejudice her petition for post-judgment relief made pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)).  Because Holly failed to allege facts in the petition to demonstrate that she exercised due diligence or had a meritorious claim or defense in the original proceeding, we affirm.

¶ 3                                I. BACKGROUND

¶ 4      Holly and Yingjun Tang (Alan) were married in 1997 and have two children together, namely: E.T., born in 1998, and C.T., born in 2000. On August 10, 2007, Holly filed a petition for dissolution of marriage. Holly was represented by counsel and Alan was *pro se*. There was no pre-decree litigation, and the parties came to a full agreement concerning the parties' children and finances. On August 30, 2007, the circuit court entered a judgment for dissolution of marriage, which incorporated a marital settlement agreement (MSA) and a joint parenting agreement. The parties were awarded joint custody of the children, with Holly designated as the primary residential custodian. Alan agreed to pay Holly $1500 per month for child support, which represented 28% of his monthly net income of $5200. The MSA provided, pertinently, that Alan would pay child support until "the emancipation *** of the child in question," which was defined as "the child's attaining the age of eighteen (18) years or until the child attains 22 years of age if the child completes his college, whichever later occurs." The MSA further provided that Alan would continue to pay child support while the child attended college or vocational school "until said child's completion or discontinuance of said educational pursuit, but in no event shall said obligations continus [*sic*] beyond the child's twenty-two (22) birthday." Alan agreed to be solely responsible for the children's educational expenses in pursuit of an undergraduate or post-high school education. The parties further agreed that Alan would receive all of the joint savings and stock accounts as well as the marital rental property, and Holly received the marital residence. All other property was awarded to the party who held it in his or her respective name. Both parties waived maintenance.

¶ 5      On September 21, 2016, Alan filed a petition for modification of child support and a petition for payment of post-high school educational expenses. In his petition to modify child

support, Alan requested to terminate child support for the older child, E.T., who had reached the age of 18 and was a freshman in college. He argued that the language in the MSA obligating him to pay child support until E.T. was 22 years old contravened section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act), which defines the term "child" as "any child under age 18 and any child under age 19 who is still attending high school." 750 ILCS 5/505(a) (West 2016). Alan further requested that he be ordered to pay $1376 per month in child support for C.T., which he alleged represented 20% of his then monthly net income. In his petition for payment of post-high-school educational expenses, Alan argued that there had been a substantial change in circumstances in the parties' respective financial positions since the entry of the judgment. Alan requested that Holly be ordered to pay two thirds of E.T.'s college expenses and for him to pay the remaining one third of the college expenses.

¶ 6 On February 27, 2018, after a hearing, the circuit court entered an order resolving Alan's motions. Specifically, the court terminated Alan's child support obligation for E.T. and modified his child support obligation for C.T. Relying on *In re Marriage of Pratt*, 2014 IL App (1st) 130465, it concluded that the payment of child support beyond emancipation contradicted section 505 of the Marriage Act and violated public policy. It continued that, even if the parties agreed to extend child support until age 22, such support is modifiable upon a substantial change in circumstances, which the court found had occurred here. It ordered Alan to pay $1145 for child support for C.T. from January 2018 until May 2018, after which his child support obligation would cease, and it ordered Holly to reimburse Alan for his overpayment of child support dating back to the filing of his petition for modification of child support. Regarding Alan's obligations for post-high school educational expenses, the circuit court stressed that the parties stipulated that they established and equally contributed to a prepaid tuition account for E.T.'s post-high school

educational expenses, such that their post-judgment conduct had the practical effect of modifying the MSA by altering the status quo. Regarding the funds that had already been paid toward post-high school educational expenses, Alan was responsible for 60% and Holly was responsible for the remaining 40%. The court further ruled that, after the funds in the college account are exhausted, Alan would be responsible for 60% of all college expenses, and Holly and E.T. would each be responsible for 20%.

¶ 7    On March 26, 2018, through new counsel, Holly filed a motion to reconsider pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2016)), requesting that the circuit court vacate the February 27, 2018, order or, in the alternative, grant a rehearing. Holly argued that the court erred in its application of existing law in several respects. Namely, she argued that: (1) the parties' agreement to extend child support to age 22 was permissible under section 510(d) of the Marriage Act; (2) there was no substantial change in circumstances to support a reduction of Alan's child support obligation; and (3) the court erred in sustaining Alan's objection to questions regarding property awarded to him under the MSA, because the testimony was relevant to the parties' agreement, including the rationale as to why Alan agreed to pay for both of their children's college expenses. Concerning the court's modification of Alan's obligations to pay for the children's post-high-school education, Holly argued that there was no substantial change in circumstances and that the court erred in concluding that the MSA was modified based on the parties' respective contributions to the college account.

¶ 8    On June 13, 2018, the circuit court denied Holly's motion to reconsider the February 27, 2018, order or, in the alternative, for a rehearing. The court's order also stated that the order was final and appealable.

¶ 9    On July 11, 2018, Holly filed a notice of appeal listing the February 27, 2018, order and the June 13, 2018, order denying her motion to reconsider.  We docketed the appeal as case No. 2-18-0552.  Holly thereafter filed a *pro se* appearance in the circuit court and began to represent herself after her counsel was granted leave to withdraw on August 23, 2018.

¶ 10    On September 11, 2018, while the appeal was pending, Holly filed in the circuit court a *pro se* petition to vacate the February 27, 2018, order pursuant to section 2-1401 of the Code.  She argued for vacatur of the February 27, 2018, order based upon four "facts that do not appear in the record."  Namely, she highlighted (1) Alan's withdrawals from marital accounts from 2007 to 2009; (2) a mistaken stipulation regarding the parties' contributions to their children's college savings account; (3) Holly's payment of the children's grade school and high school tuition at a private school; and (4) Alan's alleged underpayment of child support.  Holly attached to the petition more than 200 pages of exhibits in support of her argument.

¶ 11    On September 25, 2018, Holly moved to voluntarily dismiss her appeal in case No. 2-18-0552, which the circuit court granted on October 4, 2018, pursuant to Illinois Supreme Court Rule 309 (eff. July 1, 2017) (allowing the circuit court to dismiss an appeal, either upon motion of the appellant or by stipulation, before the record on appeal is filed in the reviewing court).  We entered an order on October 9, 2018, dismissing the appeal.

¶ 12    On October 24, 2018, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2016)), Alan moved to dismiss Holly's section 2-1401 petition.  He argued that Holly failed to satisfy the requirements of section 2-1401 of the Code because all of the "facts" that she raised were in existence at the time of the original hearing and could have been raised then.

¶ 13    On November 6, 2018, the circuit court granted Alan's motion and dismissed Holly's section 2-1401 petition, without prejudice, expressly because the petition did not address the issues

of due diligence or present a meritorious defense. The court commented that Holly's petition reflected only "displeasure with the results [of the February 27, 2018, order] and *** displeasure with her representation at the hearing by her former counsel," neither of which were bases to grant a section 2-1401 petition. The circuit court allowed Holly 30 days to replead.

¶ 14   On December 4, 2018, Holly, filed an amended section 2-1401 petition. She argued that vacatur of the February 27, 2018, order was appropriate because (1) Alan intentionally lied at trial regarding his reasons for agreeing to enter into the MSA; (2) Alan intentionally lied regarding contributions he made in 2009 to the children's college accounts; and (3) Holly had established diligence, as evidenced by emails between herself and her former counsel which pre-dated the February 27, 2018, order. She also noted that her counsel attempted to raise these issues at the hearing but was unable to because of the circuit court's evidentiary rulings.

¶ 15   On January 2, 2019, Alan moved to dismiss Holly's amended section 2-1401 petition under section 2-619 of the Code, arguing that it set forth substantially the same arguments that the circuit court had already rejected, that the petition was not a proper substitute for an appeal, and that Holly again failed to allege facts necessary to satisfy the requirements to obtain relief under section 2-1401 because all of the matters alleged in the petition were known at the time of the original hearing, such that it was not based on any new facts.

¶ 16   After hearing argument on February 4, 2019, the circuit court dismissed Holly's amended section 2-1401 petition with prejudice. The court stressed that, despite Holly's assertion that Alan lied during his trial testimony in support of his dual petitions, the court did not make such a finding. To the extent that Holly believed the lack of such a finding was in error, "that's *** in the province of the appellate court." The court also rejected Holly's various assertions that the MSA was unfair or had errors in it, or that Alan had violated the MSA, because those arguments were not a valid

basis for a section 2-1401 petition challenging the February 27, 2018, order. It noted that Holly had filed neither a section 2-1401 petition against the MSA nor any pleading alleging that Alan failed to comply with the MSA. Ultimately, the court found that Holly, "fail[ed] to, again, establish due diligence, meritorious defense, fail[ed] to bring up anything the court hasn't already considered. It is maybe the third bite of the apple."

¶ 17    On March 4, 2019, Holly filed a notice of appeal seeking reversal of the February 4, 2019, order dismissing with prejudice her amended section 2-1401 petition. This notice of appeal commenced the instant matter.

¶ 18                                    II. ANALYSIS

¶ 19    At the outset, we must define the scope of our review. In her notice of appeal, Holly only identified the February 4, 2019, order dismissing her amended section 2-1401 petition with prejudice. Nevertheless, in her statement of jurisdiction, Holly suggests that we have jurisdiction to consider the February 27, 2018, order resolving Alan's underlying petitions, the June 13, 2018, order denying reconsideration thereof, and the November 6, 2018, order dismissing Holly's initial section 2-1401 petition. She maintains that we should consider these three orders that were not specified in her notice of appeal because they are " 'a step in the procedural progression leading' to the judgment which was specified in the notice of appeal," namely the order of February 4, 2019. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23.

¶ 20    An appeal is initiated by filing a notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). No other step is jurisdictional, and an appeal is a continuation of the proceeding. *Id.* "[A] notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal." *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Still, the notice of appeal should be construed liberally, and it will confer jurisdiction when, considered as a whole,

it fairly and adequately identifies the judgment complained of and the relief sought such that the prevailing party is advised of the nature of the appeal. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34 (1979).

¶ 21 We agree with Holly that we may consider the propriety of the November 6, 2018, order dismissing her initial section 2-1401 petition. As she correctly points out, we have jurisdiction to review an order not specified in the notice of appeal if it is a step in the procedural progression leading to the judgment that *is* specified in the notice of appeal. See *Burtell*, 76 Ill. 2d at 435. There is no dispute that the November 6, 2018, dismissal order, which was entered without prejudice to Holly filing an amended section 2-1401 petition within 30 days, was a step in the procedural progression leading to the February 4, 2019, dismissal order.

¶ 22 Whether we have jurisdiction to consider the underlying February 27, 2018, order ruling on Alan's motions or the June 13, 2018, order denying reconsideration of that order is another matter. Holly appears to take conflicting positions on this issue in her briefs. For instance, she states in her opening brief that she "recognizes the limitations as to this court's jurisdiction and that the February 27, 2018[,] order cannot be overturned by this court." In her reply brief, however, Holly asserts that the "position taken in her initial brief [is] that this court does have jurisdiction over the underlying orders and should take into consideration the propriety of said orders."

¶ 23 Holly's wavering aside, it is clear that we lack jurisdiction to consider the underlying February 27, 2018, order ruling on Alan's dual motions. That order was a final judgment of the circuit court and was appealable as a matter of right under the Illinois Constitution. See Ill. Const. 1970, art. VI, sec. 6. Although Holly took steps to exercise that right by filing a notice of appeal on July 22, 2018, we were immediately divested of jurisdiction to review that order, and it was as if no notice of appeal was filed, when the circuit court granted Holly's motion to voluntarily

dismiss the appeal. *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 968-69 (2010). Once 30 days elapsed following the entry of the final and appealable order on June 13, 2018, denying her motion to reconsider the February 27, 2018, order resolving Alan's motions, Holly's only avenue to seek relief in the trial court regarding the underlying orders was to file a petition under section 2-1401. Holly did so, here, but such a petition is no substitute for a timely appeal. *Mortimer v. River Oaks Toyota, Inc.*, 378 Ill. App. 3d 597, 605 (1996).

¶ 24    Although a section 2-1401 petition must be filed in the same proceeding in which the challenged judgment is entered, it is a collateral attack that commences "a new cause of action and is not a continuation of the proceeding in which the prior judgment was entered." *Browning, Ektelon Division v. Williams*, 348 Ill. App. 3d 830, 883 (2004). "It is well settled that the filing of a section 2-1401 petition marks the beginning of a new proceeding rather than a continuation of the old one." *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶ 36. Here, because Holly's petition marked the beginning of a new proceeding rather than a continuation of the original one, neither the February 27, 2018, order nor the June 13, 2018, order denying reconsideration were steps in the procedural progression leading to the order appealed. "An appeal from the denial of a section 2-1401 petition is a proceeding wholly separate from an appeal from the original judgment." *Childers v. Krus*, 297 Ill. App. 3d 70, 77 (1998). The propriety of the underlying February 27, 2018, order ruling on Alan's motions and the June 13, 2018, order denying reconsideration are not properly before us, as we lack jurisdiction to review them. Instead, the only orders properly before us are the November 6, 2018, order dismissing Holly's section 2-1401 petition and the February 4, 2019, order dismissing Holly's amended section 2-1401 petition. Having defined the scope of our review, we turn to the merits.

¶ 25    Section 2-1401 of the Code establishes a comprehensive statutory mechanism for vacating final judgements or orders older than 30 days. *Paul v. Gerald Adelman & Associates*, 223 Ill. 2d 85, 94 (2006). The purpose of a section 2-1401 petition is to provide a statutory procedure by which final orders and judgments may be vacated after 30 days of their entry by bringing before the court that rendered the judgment "facts not appearing of record, which, if known to the court at the time of the entry of judgment, would have prevented its rendition." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 55. A proceeding under section 2-1401 "does not provide the litigant a new opportunity to perform a task that should have been completed early in the proceeding, nor does it allow a litigant relief from the consequences of his or her mistake or negligence." *In re Marriage of Benjamin*, 2017 IL App (1st) 161862, ¶ 18. When a petition is based on a claim of newly discovered evidence, the petitioner must show that the evidence was not known at the time of the original proceeding and "could not have been discovered *** with the exercise of reasonable diligence." *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 15.

¶ 26    "[A] section 2-1401 petition can present either a factual or legal challenge to a final judgment or order." *Warren County Soil & Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶ 31. Where, as is the case here, a section 2-1401 petition raises a fact-dependent challenge to a final judgment or order, the petitioner must allege specific factual allegations to support each of the following elements: (1) the existence of a meritorious defense, (2) due diligence in presenting the defense in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Id.* ¶ 51. A petition under section 2-1401 is "procedurally the counterpart of a complaint" and is subject to the applicable civil practice rules. *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 207 (2010). The respondent may answer or, as was the case here, move to dismiss the petition. *Id.* A section 2-1401 petition is subject to dismissal where it fails to state a cause of

action or shows on its face that the petitioner is not entitled to relief. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). Such a petition, when subjected to a motion to dismiss, "is to be considered in the same manner as a civil complaint." *Id*. We review *de novo* the dismissal of a section 2-1401 petition and may affirm the dismissal based on any reason found in the record. *Id*. at 497.

¶ 27    We agree with Alan that Holly failed to affirmatively allege facts in her amended section 2-1401 petition to support the assertion that she exercised diligence or presented a meritorious defense in the original proceedings.

¶ 28    Due diligence in presenting a claim or defense in the original action, for purposes of section 2-1401, requires the "petitioner to have a reasonable excuse for failing to act within the appropriate time." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986). Section 2-1401 is not a means by which a party may be relieved of the consequences of his or her own mistake or negligence. *Id*. A petitioner must demonstrate that, through no fault or negligence of her own, the error of fact or the existence of a valid defense was not raised in the original proceedings. *Id*. In other words, the section 2-1401 petitioner must show that her failure to defend against the lawsuit was caused by an excusable mistake and that, under the circumstances, she acted reasonably in failing to resist the judgment, and not negligently. *Id*. In evaluating the reasonableness of the petitioner's excuse, the circuit court must consider all of the surrounding circumstances, including the conduct of the parties and their attorneys. *Id*. There is no bright-line rule for determining whether a section 2-1401 petitioner has acted diligently. Instead, due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances. *Paul*, 223 Ill. 2d at 99-100 (citing *Airoom*, 114 Ill. 2d at 222). The requirement of due diligence denies a section 2-1401 petitioner the ability

to do something which should have been done at the earlier proceeding. *Petrauskas v. Motejunas*, 133 Ill. App. 2d 293, 296 (1971).

¶ 29    Holly appeals the dismissal of her section 2-1401 petition for relief from judgment under section 2-619 of the Code. Specifically, she maintains that her amended petition was "filed with due diligence and contained meritorious claims," such that the trial court's dismissal of the petition on those grounds was error. Addressing the requirement of diligence in the presenting her claims in the original proceedings, Holly argues that her amended petition alleged sufficient facts that she exercised due diligence because she "set forth a detailed timeline setting forth her actions following the entry of the February [27,] 2018[,] order." In her view, the timeline described "all actions taken by Holly to right the trial court's wrongs." We note that the timeline includes the July 11, 2018, notice of appeal in case No. 2-18-0552 concerning the order resolving Alan's petitions and the denial of Holly's motion to reconsider, but it omits Holly's voluntary dismissal of that appeal on October 4, 2018. Beyond this timeline, Holly offers nothing, in either her amended 2-1401 petition or in her appellate brief, to support the assertion that she demonstrated diligence in the original proceedings.

¶ 30    Although it is true that Holly filed her section 2-1401 petition after her notice of appeal concerning the underlying action but before her voluntary dismissal of that appeal, this sequence of events does not, as Holly asserts in her appellate brief, demonstrate that she "has been actively seeking to vacate the court's erroneous [February 27, 2018,] order since the moment it was entered." Holly states in her brief that she filed the original section 2-1401 petition "during the early stages of the appeal [in case No. 2-18-0552]." That the petition was filed "during the early stages of the appeal" is an understatement, because only the notice of appeal and docketing statement had been filed with the clerk of the reviewing court as of the date that Holly filed her

original section 2-1401 petition. No briefs or motions had been filed in the reviewing court by that point, and the mere filing of a notice of appeal and a docketing statement do not reflect diligence in the original proceedings in light of Holly's voluntary dismissal of that appeal. As discussed above, once the circuit court granted Holly's motion to voluntarily dismiss the appeal pursuant to Rule 309, the parties returned to the same position that they would have been in if Holly had not filed a notice of appeal. See *Bernstein*, 402 Ill. App. 3d at 971 ("[T]he dismissal of an appeal under [Rule 309] puts the parties back in the same positions they would have been as if a notice of appeal had never been filed"). Without the July 11, 2018, notice of appeal, the timeline upon which Holly relies to show diligence in the original proceedings reflects a nearly three-month gap between the denial of her motion to reconsider and the initial filing of her section 2-1401 petition. Again, Holly offers no reasonable excuse for failing to raise her arguments in a direct appeal, where those arguments belonged.

¶ 31    In her amended 2-1401 petition, Holly offered the following explanation for choosing to dismiss her appeal in favor of pursing her claims via section 2-1401 of the Code. She explained:

> "[Holly] signed [a] new contract and paid retainer money to let [her attorney] appeal this case to the appellate court. [Holly] did not know that a petition under 2-1401 is another option until 08/01/2018. After the British Royal wedding, [Holly] was watching [the] Amazon TV show[,] 'Suits,' and learned that a closed case could be 'reopened.' On 08/01/2017 [*sic*], [Holly] sent [an] e-mail to [her attorney] to discuss the possibility of re-opening her case. But [her attorney] insisted to appeal to the appellate court. After [she] Google[d] online for the criteria of re-opening a case, [Holly] determined that filing [a] petition under 2-1401 would be better. Appealing to the appellate court is not quite right, because it is not the Court's fault or error when [Alan] was constantly lying and providing

false statements to mislead the Court. Appeal to the appellate court is therefore not the best way to continue the case. *** On 8/16/2018, [Holly] e-mailed [her attorney] regarding her decision not to appeal this case to the appellate court. [Her counsel] withdrew [from] the case on 8/17/2018."

¶ 32 Holly's stated reasons for voluntarily dismissing her direct appeal plainly do not demonstrate a reasonable excuse for failing to act within the appropriate time in the original proceedings, nor do they suggest that Holly acted reasonably in failing to contest the February 27, 2018, order in a direct appeal. " 'Relief under section [2-1401] is available only to those who diligently pursue their legal defenses and remedies in court, not to those who disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost.' " *Airoom*, 114 Ill. 2d at 224 (quoting *Abbell v. Munfield*, 76 Ill. App. 3d 384, 388 (1979). Instead, Holly's excuse is indicative of a litigant who did not appreciate the well-settled principle that a section 2-1401 petition "is not a substitute for an appeal, nor can it be used to shield a litigant from the consequences of his own mistakes or his counsel's negligence." *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 110 (2009). Holly states in her appellate brief that the procedural history of her case has "been unorthodox," and she states that it "has something to do with [her] self-representation and the lack of guidance from *** counsel," and she argues that "Alan should not be able to take advantage of [her] actions as a *pro se* litigant." Holly's characterization of the timeline outlined in her brief as "unorthodox" appears aimed at minimizing the procedural posture of the underlying matter and conflates a collateral attack under section 2-1401 with a direct appeal. This is improper. While we are cognizant that Holly represented herself when she moved to dismiss her appeal, as well as when she filed her section 2-1401 petitions, we have long held that *pro se* litigants are held to the same standards as litigants represented by

counsel. *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067. Put simply, Holly offers no basis for us to conclude that she acted reasonably in dismissing her direct appeal or that the dismissal was caused by an excusable mistake. In the absence alleged facts which, if accepted as true, could make a showing of diligence in the original proceedings, Holly has failed to demonstrate diligence in the original action.

¶ 33 In the alternative, Holly argues that the requirement to affirmatively set forth specific allegations supporting due diligence should be relaxed in the instant case. Holly correctly notes that equitable considerations permit the trial court "to relax the applicable due diligence standards under the appropriate limited circumstances." *Warren County*, 2015 IL 117783, ¶ 51 (citing *Airoom*, 114 Ill. 2d at 226-29). While courts may relax this requirement where the interests of justice and good conscience require (*Airoom,* 114 Ill. 2d at 225), it "is justified only under extraordinary circumstances" (*McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 32 (quoting *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005)). Holly's amended petition offers no argument seeking equitable relief and, as Alan points out, she did not argue equity in the section 2-1401 proceedings in the court below. As such, the argument is forfeited. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Likewise, Holly argues that the trial court made certain substantive errors in its February 27, 2018, order modifying Alan's obligations for child support and contribution to college expenses, but she did not make those arguments in either of her section 2-1401 petitions. These arguments could have properly been made in a direct appeal from that ruling, but Holly dismissed that appeal, and she offers no explanation as to how we may reach the merits of those

arguments when they were made for the first time in this court, on appeal from the dismissal of her amended section 2-1401 petition.

¶ 34    Forfeiture aside, there is no basis to relax the requirement of due diligence in this case. As the first district recently observed, courts have relaxed or excused the requirement of due diligence only " 'in the extraordinary circumstances where it is necessary to prevent an unjust entry of default judgment [citation], or where there is unconscionable conduct by the opposing party that would require that the due diligence requirement be relaxed [citation].' " (Emphasis omitted.) (*McGinley Partners, LLC*, 2018 IL App (1st) 172976, ¶ 32 (quoting *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 689 (2002)). " '[I]n each case[,] there was evidence of fraudulent conduct by the plaintiff in procuring or concealing the judgment, or other unusual circumstances which made enforcement of the judgment unjust.' " *McGinley,* 2018 IL App (1st) 172976, ¶ 32 (quoting *European Tanspa, Inc. v. Shrader*, 242 Ill. App. 3d 103, 1993)). Here, the February 27, 2018, order was not entered by default. Rather, it was entered after a two-day hearing at which Holly was represented by counsel of her choosing, and she was likewise represented by counsel on reconsideration of that ruling and when she filed a direct appeal. Holly's subsequent decision to discharge her counsel, voluntarily dismiss the direct appeal, and pursue her claims *pro se* via section 2-1401 based on internet research and the TV show "Suits" are not "extraordinary circumstances" that would allow for the requirement of diligence to be relaxed.

¶ 35    Moreover, Holly advances no reasonable argument that the February 27, 2018, order was procured by fraudulent conduct or other unreasonable circumstances. In her brief, Holly describes her amended petition as raising "Alan's contradictions and misrepresentations *** in his motions and during his testimony," and she states that his "misconduct and perjury should not have been ignored by the trial court." She continues that, because of "the [j]udge's refusal to allow Holly's

counsel to cross-examine Alan regarding the property awarded to him in the [j]udgment and the value of the additional assets allocated to Alan, *** Alan was able to mislead the court during the hearing." Put simply, the circuit court's exercise of its discretion in sustaining Alan's objection based on relevance, such that Holly was unable to question him on the specifics of the disposition of property in the underlying dissolution proceedings, does not amount to fraudulent conduct on Alan's part. In any event, the circuit court was aware during the 2-1401 proceedings of Holly's arguments concerning inconsistencies between Alan's petitions and his trial testimony, as well as Alan's purported conduct in "mislead[ing]" the circuit court. Holly states in her brief that "[t]he trial court itself raised," in its oral ruling, certain "contradictions between Alan's testimony, his pleadings, and what he stipulated to." Moreover, the circuit court noted that "[t]he argument, I guess, is if [Alan] received an excessive amount of assets, more than 50% of the assets, *** this is better consideration for him agreeing to the settlement agreement. But that isn't the issue in this case, and it wasn't shown." The court continued that, "[a]s a matter of fact, the settlement agreement appears to be equitable and equal to some extent." In light of the court's express recognition of the inconsistencies in Alan's statements, and the fact that the court was aware of the purpose of the line of questioning that Holly was unable to explore due to the evidentiary ruling, there plainly was no fraudulent conduct or other circumstances that would allow for the diligence requirement to be either eliminated or relaxed.

¶ 36    Because Holly has failed to sufficiently allege facts sufficient to demonstrate one of the elements for vacating the judgment, namely diligence in the original proceeding, we need not consider whether she alleged facts sufficient to establish a meritorious claim or defense. *McGinley*, 2018 IL App (1st) 172976, ¶ 35. Nevertheless, because the trial court addressed the element in dismissing Holly's amended petition, for the sake of completeness, we comment on it briefly.

¶ 37    Holly seemingly argues that she presented a meritorious defense by stressing the trial court's evidentiary ruling sustaining, on relevancy grounds, Alan's objection to questions concerning the division of the marital estate as provided in the MSA. She argues that "[t]he only reason this evidence [concerning the division of property per the MSA] wasn't shown was because the court sustained the objection to any testimony regarding Alan's assets." She continued that she "could not have proved these facts when she was barred from doing so. This is the meritorious claim contained in her 1401 petition ***." Here, Holly appears to argue that her section 2-1401 petition is a fact-dependent challenge, or a "new facts" type of petition, like in *Airoom*, which raises facts not appearing in the record that would have prevented entry of the judgment or order if known to the court when it rendered judgment.

¶ 38    We agree with Alan that Holly's asserted meritorious claim amounts to a belated disagreement with the trial court's evidentiary ruling. Although Holly was unable to present certain evidence regarding Alan's understanding of the 2007 division of the marital estate because of the circuit court's evidentiary ruling at the hearing, her arguments nevertheless could have been asserted in the direct appeal from the February 27, 2018, order. It is well settled that a section 2-1401 petition should not be used to relitigate issues which could have been raised or asserted in a direct appeal. See *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 756 (2006) ("the plaintiff's [section 2-1401] petition must fail because its grounds *** were fully argued before the circuit court and, as such, could have been raised in a direct appeal which was not forthcoming. Accordingly, they cannot now be invoked through a collateral attack under 2-1401"); *Universal Outdoor, Inc. v. City of Des Plaines*, 236 Ill. App. 3d 75, 80-81 ("[a] section 2-1401 petition is not intended to provide for review of an order from which a party could have taken a timely appeal, and such a petition is not to be invoked as a substitute for a party's right to appeal"); *People v. Mamolella*, 42 Ill. 2d 69,

72 (1969) ("[I]t is not within the purpose of [section 2-1401] *** to have claims considered which could have been presented in the trial court and on direct review.").

¶ 39    Critically, Holly's own brief acknowledges in several instances that her arguments could have been brought in a direct appeal. She asserts that she "attempted to raise [the four 'facts' outlined in her amended section 2-1401 petition] at trial, [but] was unable to do so due to an evidentiary ruling." She asserts that, at that "moment ***, there was a blatant error." She continues that "these issues first arose" "when the trial court *** barred Holly from presenting evidence that was absolutely germane to the proceedings." In another part of her brief, Holly asks, rhetorically, whether she "[s]hould *** have proceeded in this [appellate] [c]ourt in her initial appellate filing (case No. 2-18-0552)?" Answering her own question, she states that "[p]erhaps that would have streamlined this case and brought before this [appellate] [c]ourt the underlying order, but that did not happen." These various assertions all but concede that Holly's amended petition was not based upon any new facts discovered subsequent to the entry of the February 27, 2018, order. Holly cannot reasonably argue that the issues and facts she raised in her amended petition were not known to her prior to the entry of the February 27, 2018, order, could not have been litigated prior to the entry of that order, or could not have been challenged on direct appeal. Put simply, her argument is not based upon any new facts or evidence, but upon facts of which she was aware during the underlying action.

¶ 40                                    III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 42    Affirmed.